UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXIS J. BURNS by and through her legal guardian, OFFICE OF PUBLIC GUARDIAN<br>   Plaintiff<br><br>v.<br><br>HALE AND DORR LLP, WILMER CUTLER PICKERING HALE AND DORR LLP, HALDOR INVESTMENT ADVISORS LIMITED PARTNERSHIP, and HALE AND DORR CAPITAL MANAGEMENT LLC<br>   Defendants | CIVIL ACTION NO. 05-11113NMG |

## AMENDED COMPLAINT

The Plaintiff, Alexis J. Burns, by and through her legal guardian, the Office of Public Guardian, alleges as follows:

### Introduction

1. This complaint is brought for compensatory and punitive damages, prejudgment interest, costs, attorney's fees, and expenses arising out of the defendants' negligence and breaches of their fiduciary obligations to the Plaintiff. The defendant Hale and Dorr LLP ("Hale and Dorr") was entrusted with more than $2.4 million to be invested in trust for the benefit of the Plaintiff, and Hale and Dorr agreed to create a trust to hold those funds. However, Hale and Dorr failed to establish the trust. Furthermore, Hale and Dorr, its agent, the defendant Haldor Investment Advisors Limited Partnership ("Haldor LP"), and Haldor LP's successor-in-interest, the defendant Hale and Dorr Capital Management LLC ("H&D Capital"), paid out approximately $1.6 million of those funds to persons other than the Plaintiff without proper

controls. In addition, those defendants invested the trust funds improperly, causing a significant loss of principal. The defendants' conduct was unfair and deceptive conduct, and caused the Plaintiff to suffer substantial damages, in that most of the trust assets have been dissipated. As the successor-in-interest to Hale and Dorr, the defendant Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer LLP") is liable for the wrongdoing of Hale and Dorr. H&D Capital is liable both for its own wrongdoing and for the wrongdoing of Haldor LP, its predecessor-in-interest. Because the defendants' wrongful conduct was knowing and willful, the Plaintiff should be awarded treble her actual damages, with interest, plus attorney's fees and expenses.

### Jurisdiction And Parties

2. This court has jurisdiction over this action pursuant to 28 U.S.C. §§ 1332 and 1367.

3. The Plaintiff, Alexis J. Burns, is a resident of Kingston, New Hampshire. The Office of Public Guardian ("OPG") has a usual place of business in Concord, New Hampshire. By an order of the Rockingham, New Hampshire Probate Court dated May 29, 2003, OPG was appointed to perform the duties of guardian over the Plaintiff's estate, and OPG accepted that appointment.

4. Hale and Dorr was, at all relevant times, a Massachusetts limited liability partnership registered with the Secretary of the Commonwealth pursuant to Mass. Gen. Laws, chapter 108A, with its principal place of business in Boston, Massachusetts.

5. Wilmer LLP is a Delaware limited liability partnership registered with the Secretary of the Commonwealth pursuant to Mass. Gen. Laws, chapter 108A, with a usual place of business in Boston, Massachusetts. Wilmer LLP is the successor-in-interest to Hale and Dorr.

6.  Haldor LP was, at all relevant times, a Delaware limited partnership registered with the Secretary of the Commonwealth, with its principal place of business in Boston, Massachusetts.

7.  H&D Capital is a Delaware limited liability company registered with the Secretary of the Commonwealth, with its principal place of business in Boston, Massachusetts. H&D Capital is the successor-in-interest to Haldor LP.

**Background**

8.  The Plaintiff is a minor and suffers from cerebral palsy that resulted from a difficult delivery at the time of her birth, in 1988.

9.  In 1992, the Plaintiff's attorney, Andrew C. Meyer, Jr. ("Meyer") of Lubin & Meyer, P.C., brought an action on behalf of the Plaintiff against physicians who were involved in the Plaintiff's delivery, alleging medical malpractice. The action was brought in the Superior Court in Suffolk County, Commonwealth of Massachusetts and captioned "Alexis J. Burns PPA, et al. v. Catherine Meltzer, M.D., et al.," with Docket No. 92-4866 (the "Lawsuit").

10. On May 4, 1999, a judgment was entered in favor of the Plaintiff in the Lawsuit. Pursuant to that judgment, sums were paid to Meyer that resulted in a net recovery for the Plaintiff, after deducting fees and expenses, of $2,425,949.96 (the "Trust Funds").

11. Shortly thereafter, Meyer, on behalf of the Plaintiff, entered into an agreement with Hale and Dorr to have Hale and Dorr create a so-called Special Needs Trust (the "Trust") for the benefit of the Plaintiff. Pursuant to that agreement, the Trust Funds were to be placed in an account under the Trust and invested appropriately by Haldor LLP for the benefit of the Plaintiff. At that time, Hale and Dorr and Haldor LP were affiliated entities, and they worked closely together to provide wealth management services to their clients.

12. Attorneys at Hale and Dorr promptly drafted a declaration of trust, entitled "Alexis Janet Burns 1999 Irrevocable Trust," for the purpose of establishing the Trust. The first draft of the declaration of trust was dated May 21, 1999.

13. Under a cover letter dated May 27, 1999, Meyer delivered to John Fabiano, Esquire of Hale and Dorr a check in the amount of $2,425,949.96. In the letter, Meyer described the check as representing "the proceeds due to the Alexis Burns Trust from the verdict."

14. Also on May 27, 1999, Hale and Dorr and Haldor LP opened an account with the name "Burns, Alexis AG" (the "Account"). The Trust Funds were deposited to the Account.

15. In a letter dated May 27, 1999, Jeffrey E. Anthony, as Managing Director of Haldor LP, wrote to the Plaintiff's father, David Burns ("Mr. Burns"), describing the terms under which Haldor LP would "act as agent for the management of your investment portfolio."

16. Under the terms of the declaration of trust, as drafted and revised by Hale and Dorr, two trustees were to be appointed for the Trust: Mr. Burns, and another person who would act as an independent trustee. The trustees were to make distributions to or for the benefit of the Plaintiff during her lifetime, for the purpose of supplementing the benefits available to her under the Medicaid and Supplemental Security Income programs. The declaration of trust was to be executed by Mr. Burns as declarant, and by Mr. Burns and the other trustee in their capacity as trustees.

17. However, the attorneys at Hale and Dorr failed to have Mr. Burns sign the declaration of trust.

18. Nevertheless, Hale and Dorr and Haldor LP made repeated distributions of moneys to Mr. Burns from the Account. They did so without requiring Mr. Burns to demonstrate that he would use the funds for the benefit of the Plaintiff in accordance with the

4

terms of the Trust. They also did not require Mr. Burns to document how the moneys were expended.

19. Between May 27, 1999 and April 22, 2003, Haldor LP and its successor, H&D Capital, disbursed from the Account to Mr. Burns, at his request, moneys totaling approximately $1.6 million. Few if any of those moneys were expended for the benefit of the Plaintiff.

20. Furthermore, when Haldor LP received the Trust Funds, it had a duty to invest those assets prudently, in a manner that would earn a reasonable return without putting the principal amount of the trust assets at significant risk. Haldor, however, did not invest the trust assets in a prudent manner. As a result, the value of the Trust Funds declined significantly after May 27, 1999. As of July 31, 2003, the remaining assets held in the Account had a value of approximately $645,000.

21. In August 2003, after OPG had been appointed guardian of the Plaintiff, and at the direction of OPG, Hale and Dorr arranged to have the remaining assets in the Account transferred to an account at BankNorth under the control of OPG.

22. Neither Hale and Dorr nor Haldor LP nor H&D Capital ever prepared or filed tax returns for the assets held in the Account. Nor, on information and belief, did any of the defendants advise Mr. Burns that tax returns were required to be filed with respect to the assets held in the Account.

### COUNT ONE
### (Negligence by Hale and Dorr)

23. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 22 as if set forth fully herein.

24. Hale and Dorr and its agents owed a duty of care to the Plaintiff as the intended beneficiary of the Trust and the Account. Hale and Dorr and its agents breached that duty by

failing to ensure that the Trust was properly implemented, by failing to ensure that the Trust Funds were properly invested, and by failing to ensure that the Trust Funds were expended consistent with the purposes of the Trust and for the benefit of the Plaintiff.

25. The negligence of Hale and Dorr and its agents caused the Plaintiff to suffer substantial harm.

## COUNT TWO
### (Negligence by Haldor LP)

26. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 25 as if set forth fully herein.

27. Haldor LP and its agents owed a duty of care to the Plaintiff as the intended beneficiary of the Trust and the Account. Haldor LP and its agents breached that duty by failing to ensure that the Trust was properly implemented, by failing to ensure that the Trust Funds were properly invested, and by failing to ensure that the Trust Funds were expended consistent with the purposes of the Trust and for the benefit of the Plaintiff.

28. The negligence of Haldor LP and its agents caused the Plaintiff to suffer substantial harm.

## COUNT THREE
### (Negligence by H&D Capital)

29. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 28 as if set forth fully herein.

30. H&D Capital and its agents owed a duty of care to the Plaintiff as the intended beneficiary of the Trust and the Account. H&D Capital and its agents breached that duty by failing to ensure that the Trust was properly implemented, by failing to ensure that the Trust Funds were properly invested, and by failing to ensure that the Trust Funds were expended consistent with the purposes of the Trust and for the benefit of the Plaintiff.

31. The negligence of H&D Capital and its agents caused the Plaintiff to suffer substantial harm.

## COUNT FOUR
### (Breach of Fiduciary Duty by Hale and Dorr)

32. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 31 as if set forth fully herein.

33. Hale and Dorr and its agents owed a fiduciary duty to the Plaintiff. Hale and Dorr and its agents breached that duty by failing to ensure that the Trust was properly implemented, by failing to ensure that the Trust Funds were properly invested, and by failing to ensure that the Trust Funds were expended consistent with the purposes of the Trust and for the benefit of the Plaintiff.

34. The breaches of fiduciary duty of Hale and Dorr and its agents caused the Plaintiff to suffer substantial harm.

## COUNT FIVE
### (Breach of Fiduciary Duty by Haldor LP)

35. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 34 as if set forth fully herein.

36. Haldor LP and its agents owed a fiduciary duty to the Plaintiff. Haldor LP and its agents breached that duty by failing to ensure that the Trust was properly implemented, by failing to ensure that the Trust Funds were properly invested, and by failing to ensure that the Trust Funds were expended consistent with the purposes of the Trust and for the benefit of the Plaintiff.

37. The breaches of fiduciary duty of Haldor LP and its agents caused the Plaintiff to suffer substantial harm.

## COUNT SIX
### (Breach of Fiduciary Duty by H&D Capital)

38. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 37 as if set forth fully herein.

39. H&D Capital and its agents owed a fiduciary duty to the Plaintiff. H&D Capital and its agents breached that duty by failing to ensure that the Trust was properly implemented, by failing to ensure that the Trust Funds were properly invested, and by failing to ensure that the Trust Funds were expended consistent with the purposes of the Trust and for the benefit of the Plaintiff.

40. The breaches of fiduciary duty of H&D Capital and its agents caused the Plaintiff to suffer substantial harm.

## COUNT SEVEN
### (Unjust Enrichment against Hale and Dorr)

41. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 40 as if set forth fully herein.

42. By its conduct and that of its agents, Hale and Dorr has been unjustly enriched at the expense, and to the detriment, of the Plaintiff.

43. Hale and Dorr's inequitable conduct has caused the Plaintiff to suffer damages in an amount to be determined at trial.

## COUNT EIGHT
### (Unjust Enrichment against Haldor LP)

44. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 43 as if set forth fully herein.

45. By its conduct and that of its agents, Haldor LP has been unjustly enriched at the expense, and to the detriment, of the Plaintiff.

46.     Haldor LP's inequitable conduct has caused the Plaintiff to suffer damages in an amount to be determined at trial.

## COUNT NINE
### (Unjust Enrichment against H&D Capital)

47.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 46 as if set forth fully herein.

48.     By its conduct and that of its agents, H&D Capital has been unjustly enriched at the expense, and to the detriment, of the Plaintiff.

49.     H&D Capital's inequitable conduct has caused the Plaintiff to suffer damages in an amount to be determined at trial.

## COUNT TEN
### (Money Had and Received against Hale and Dorr)

50.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 49 as if set forth fully herein.

51.     By its conduct and that of its agents, Hale and Dorr has had and received monies which in equity, justice and good conscience should be paid to the Plaintiff.

52.     Hale and Dorr is liable to the Plaintiff for money had and received in an amount to be determined at trial.

## COUNT ELEVEN
### (Money Had and Received against Haldor LP)

53.     The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 52 as if set forth fully herein.

54. By its conduct and that of its agents, Haldor LP has had and received monies which in equity, justice and good conscience should be paid to the Plaintiff.

55. Haldor LP is liable to the Plaintiff for money had and received in an amount to be determined at trial.

## COUNT TWELVE
### (Money Had and Received against H&D Capital)

56. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 55 as if set forth fully herein.

57. By its conduct and that of its agents, H&D Capital has had and received monies which in equity, justice and good conscience should be paid to the Plaintiff.

58. H&D Capital is liable to the Plaintiff for money had and received in an amount to be determined at trial.

## COUNT THIRTEEN
### (Violations of Mass. Gen. Laws, Chapter 93A against Hale and Dorr)

59. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 58 as if set forth fully herein.

60. At all relevant times, Hale and Dorr was engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws, chapter 93A.

61. By its conduct and that of its agents, Hale and Dorr engaged in unfair and deceptive acts and practices in willful and knowing violation of Mass. Gen. Laws, chapter 93A, sections 2 and 9.

62. Hale and Dorr's violations of Mass. Gen. Laws, chapter 93A have occurred primarily and substantially within the Commonwealth of Massachusetts.

63. Hale and Dorr's unfair and deceptive acts and practices have caused the Plaintiff to suffer substantial damages.

64. By a letter dated August 16, 2005, the Plaintiff made a written demand for relief upon the defendants in accordance with section 9 of chapter 93A. A true copy of that demand letter is attached as <u>Exhibit A</u>.

## COUNT FOURTEEN
### (Violations of Mass. Gen. Laws, Chapter 93A against Haldor LP)

65. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 64 as if set forth fully herein.

66. At all relevant times, Haldor LP was engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws, chapter 93A.

67. By its conduct and that of its agents, Haldor LP engaged in unfair and deceptive acts and practices in willful and knowing violation of Mass. Gen. Laws, chapter 93A, sections 2 and 9.

68. Haldor LP's violations of Mass. Gen. Laws, chapter 93A have occurred primarily and substantially within the Commonwealth of Massachusetts.

69. Haldor LP's unfair and deceptive acts and practices have caused the Plaintiff to suffer substantial damages.

## COUNT FIFTEEN
### (Violations of Mass. Gen. Laws, Chapter 93A against H&D Capital)

70. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 69 as if set forth fully herein.

71. At all relevant times, H&D Capital was engaged in the conduct of trade or commerce within the meaning of Mass. Gen. Laws, chapter 93A.

72. By its conduct and that of its agents, H&D Capital engaged in unfair and deceptive acts and practices in willful and knowing violation of Mass. Gen. Laws, chapter 93A, sections 2 and 9.

73. H&D Capital's violations of Mass. Gen. Laws, chapter 93A have occurred primarily and substantially within the Commonwealth of Massachusetts.

74. H&D Capital's unfair and deceptive acts and practices have caused the Plaintiff to suffer substantial damages.

## COUNT SIXTEEN
### (Successor Liability of Wilmer LLP)

75. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 74 as if set forth fully herein.

76. As successor-in-interest to Hale and Dorr, Wilmer LLP is liable to the Plaintiff for any wrongdoing by Hale and Dorr.

## COUNT SEVENTEEN
### (Successor Liability of H&D Capital)

77. The Plaintiff repeats and realleges each and every allegation contained in paragraphs 1 through 76 as if set forth fully herein.

78. As successor-in-interest to Haldor LP, H&D Capital is liable to the Plaintiff for any wrongdoing by Haldor LP.

## Prayers For Relief

WHEREFORE, the Plaintiff, Alexis J. Burns, demands judgment:

1. Against the Defendants for damages, as such damages may appear at trial, trebled pursuant to chapter 93A of the Massachusetts General Laws, with prejudgment interest;

2. Requiring the Defendants to render to the Plaintiffs a full and complete accounting of the trust funds for each calendar year from 1999 to the present;

3. Awarding the Plaintiff her attorney's fees and expenses in this action;

4. Awarding the Plaintiff her costs in this action; and

5. Granting such further relief, legal and equitable, as may be just and proper.

**DEMAND FOR JURY TRIAL**

The Plaintiff, Alexis J. Burns, demands a trial by jury.

                ALEXIS J. BURNS by her legal guardian,
                OFFICE OF PUBLIC GUARDIAN

                By her attorneys,

                /s/ R. Alan Fryer
                R. Alan Fryer (BBO# 180830)
                BADGER DOLAN PARKER & COHEN
                One State Street
                Boston, MA  02109
                (617) 482-3030

91973

**BADGER, DOLAN, PARKER & COHEN**
ATTORNEYS AT LAW
ONE STATE STREET
BOSTON, MASSACHUSETTS 02109

---

| | | |
|---|---|---|
| George F. Parker, III<br>James B. Dolan<br>Lawrence J. Cohen<br>―――――<br>Irina V. Gott<br>Amy L. Witts | TELEPHONE (617) 482-3030<br>FACSIMILE  (617) 482-6919<br>e-mail:  badger@badgerlaw.com<br><br>R. ALAN FRYER<br>afryer@badgerlaw.com | *Of Counsel*<br>―――――<br>Dorothy M. Bickford*<br>Philip W. Riley<br>John D. Hackett<br>R. Alan Fryer<br>*also admitted in New Hampshire |

August 16, 2005

**FIRST-CLASS MAIL and
CERTIFIED MAIL, RETURN RECEIPT REQUESTED**

John M. Westcott, Jr., Esquire
Wilmer Cutler Pickering Hale and Dorr LLP
60 State Street
Boston, MA  02109

      Re:    Alexis J. Burns – Special Needs Trust

Dear Mr. Westcott:

      This firm represents the New Hampshire Office of Public Guardian ("OPG") as legal guardian of Alexis J. Burns ("Alexis"). I am writing to you in your capacity as the resident agent for each of the following entities: Hale and Dorr LLP ("H&D"); H&D's successor entity Wilmer Cutler Pickering Hale and Dorr LLP; and Haldor Investment Advisors L.P. ("Haldor"), which is now known as Hale and Dorr Capital Management LLC (collectively, the "Hale and Dorr Parties"). This letter constitutes a demand upon each of the Hale and Dorr Parties for settlement pursuant to Massachusetts General Laws, chapter 93A, sections 2 and 9.

      In May 1999, Andrew C. Meyer, Jr., Esquire of Lubin & Meyer, P.C. received payment on a final judgment in favor of Alexis in a medical malpractice action. The net recovery after deducting fees and expenses was approximately $2.4 million. Later that month, Meyer contacted H&D and asked H&D to create a special needs trust ("SNT") for the benefit of Alexis, who is a minor, and to invest and manage the funds for her benefit in accordance with the legal requirements for an SNT. H&D agreed to do so and, under the terms of the arrangement, the funds were to be invested and managed by H&D's investment subsidiary, Haldor.

      On May 27, 1999, Alexis's father, David Burns ("Burns") picked up from Mr. Meyer a check in the amount of $2,425,949.96, payable to "David Burns, Trustee." That same day, Burns met with John G. Fabiano, Esquire ("Fabiano") and Michael L. Fay, Esquire ("Fay") of H&D and the managing director of Haldor, Jeffrey E. Anthony, and delivered the check to them.

BADGER, DOLAN, PARKER & COHEN
John M. Westcott, Jr., Esquire
August 16, 2005
Page 2

However, H&D never established the SNT. While H&D's attorneys prepared drafts of an instrument to create the SNT and arranged for Roland Gray III, Esquire ("Gray") of Deutsch, Williams, Brooks, DeRensis & Holland, P.C. to serve with Burns as a co-trustee of the SNT, they never obtained Burns's signature on the instrument.

Nevertheless, H&D and Haldor immediately and repeatedly honored requests made by Burns for distributions of funds from the trust account, and they did so without requiring Burns to explain what the funds would be used for and without requiring Burns to demonstrate that the funds were being expended for the benefit of Alexis in accordance with the requirements of an SNT. **Between May 1999 and April 2003, at the request of Burns, H&D and/or Haldor disbursed amounts totaling more than $1.6 million.** The first three distributions (totaling $18,000) were in the form of checks made payable to Burns. The remaining distributions were made in the form of wire transfers, either to accounts under Burns's control, or to an account in the name of his then-girlfriend Dena Bouzianis (transfers totaling $161,300), or to an account in the name of R&K Forrestry (transfers totaling $214,200). The documents in H&D's own files reflect that H&D and Haldor made little or no effort to determine what the funds would be used for and never documented how the funds were actually spent. **Moreover, none or virtually none of those funds were actually expended for the benefit of Alexis.**

The purpose of setting up an SNT for Alexis was to help provide for her needs over her lifetime, but without jeopardizing her eligibility for public assistance, including Medicaid and Supplemental Security Income benefits. Yet, in less than four years, H&D and Haldor made distributions of approximately two-thirds of the trust assets, leaving insufficient funds to provide for Alexis during the remainder of her lifetime. Moreover, they did so without first requiring the appointment of an independent trustee who could ensure that those distributions would be used to provide for Alexis's welfare without jeopardizing Alexis's eligibility for public assistance, and they did not otherwise take any steps to ensure that the distributions would not disqualify Alexis for such benefits.

Furthermore, H&D and Haldor had a duty to invest the trust assets prudently, in a manner that would earn a reasonable return without putting the principal amount of the trust assets at significant risk. Haldor, however, did not invest the trust assets in a prudent manner. As a result, when the stock market crashed, the value of the trust assets declined significantly.

On May 29, 2003, OPG was appointed guardian for Alexis. Shortly thereafter, at the request of OPG, Haldor transferred the remaining assets in its account for Alexis (with a total value of approximately $640,000) to an account for the benefit of Alexis that OPG set up at BankNorth.

Chapter 93A makes it unlawful for anyone engaged in trade or commerce to commit unfair or deceptive acts or practices. The conduct of H&D and Haldor described above is unfair and deceptive, in violation of chapter 93A. That unfair and deceptive conduct includes, but is not necessarily limited to, the following:

BADGER, DOLAN, PARKER & COHEN
John M. Westcott, Jr., Esquire
August 16, 2005
Page 3

- The failure of H&D to have the instrument creating the Special Needs Trust executed;

- The failure of H&D and Haldor to have an independent trustee oversee the trust assets and approve any distributions of those assets;

- The distribution by H&D and Haldor of trust assets to Alexis's father without determining in advance that the funds would be expended for Alexis's benefit and in a manner that would not jeopardize her right to receive public assistance;

- The failure of H&D and Haldor to require Alexis's father to document the manner in which the trust assets distributed at his request were actually expended;

- The distribution by H&D and Haldor of trust assets in amounts that were obviously excessive; and

- The failure of H&D and Haldor to invest the trust assets in a prudent manner so as to preserve as much of the trust principal as possible for as long as possible.

Under chapter 93A, Alexis will be entitled to recover any damages that she may have suffered as a result of the Hale and Dorr Parties' unfair or deceptive conduct, plus attorney's fees and expenses. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 629 (1978). The damages that Alexis is entitled to recover include not just direct monetary damages, but all foreseeable damages, as well as pre-judgment interest. Haddad v. Gonzalez, 410 Mass. 855, 867 (1991) (all consequential damages are recoverable); Patry v. Liberty Mobilehome Sales, Inc., 394 Mass. 270, 273 (1985).

The damages that Alexis has suffered as a result of the Hale and Dorr Parties' unfair and deceptive conduct are significant. Those damages include the loss of more than $1.6 million in principal, the loss of income that could have been earned on that principal, and the amounts that could have been earned on the other trust assets if invested in a prudent manner.

Chapter 93A also permits Alexis to recover between double and treble her actual damages for a violation of the statute that is knowing or willful. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 627-29 (1978). Here, as just one example, H&D's conduct was knowing and willful because H&D was well aware that the instrument to create the SNT needed to be executed, yet it simply abandoned its efforts to get Alexis's father to sign the document. Moreover, H&D and Haldor both knew or should have known that there was no valid basis for distributing more than $1.6 million to Alexis's father over a period of less than four years.

It is important to note that, when more than one defendant engages in knowing or willful conduct that violates chapter 93A, the court may award multiple damages against each defendant. International Fidelity Ins. Co. v. Wilson, 387 Mass. 841, 856 (1983); Mohamed Bin

BADGER, DOLAN, PARKER & COHEN
John M. Westcott, Jr., Esquire
August 16, 2005
Page 4

Bandar Mohamed Bin Abdul Rahman Al Saud v. East Forward, Inc., 43 Mass. App. 207, 209 (1997) (multiple damages awarded against both corporation and its president). Therefore, each of the Hale and Dorr Parties that were involved in any knowing and willful violations of chapter 93A can be held liable for multiple damages. The violations of chapter 93A described above are sufficient to support an award of double or even treble the actual damages against each of the Hale and Dorr Parties.

The Hale and Dorr Parties have an obligation to make a reasonable offer of settlement within 30 days. If they refuse to do so in bad faith, they can be liable for double or treble the actual damages suffered by Alexis, even if its unfair and deceptive conduct was not knowing or willful. Heller v. Silverbranch Construction Corp., 376 Mass. 621, 627 (1978).

If Alexis and OPG are required to pursue legal remedies against Hale and Dorr, they will seek to recover all damages that Alexis has incurred and any additional foreseeable expenses, as well as attorney's fees and multiple damages. However, OPG is willing to accept an offer of $2 million in full settlement of its claims on behalf of Alexis, with Hale and Dorr to make payment in full within ten days after OPG confirms acceptance of the offer.

I look forward to hearing from you.

Very truly yours,

R. Alan Fryer

90756_1