UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

ALEXIS J. BURNS by and through her legal
guardian, OFFICE OF PUBLIC GUARDIAN
    Plaintiff

v.

HALE AND DORR LLP, et al.,
    Defendants

CIVIL ACTION NO. 05-11113NMG

## PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION
## FOR PARTIAL JUDGMENT ON THE PLEADINGS

The Plaintiff, Alexis J. Burns ("Alexis"), by and through her legal guardian, the Office of

Public Guardian ("OPG"), hereby opposes the Joint Motion of All Defendants for Partial

Judgment on the Pleadings, on Counts 13, 14, 15, 16, and 17, on the grounds that the Amended

Complaint properly alleges the sending of a demand letter pursuant to Mass. Gen. Laws,

chapter 93A, and that a viable cause of action has been stated under chapter 93A.  More

specifically, OPG states that:

    1.    OPG sent a timely demand letter to the defendants pursuant to chapter 93A that

fully meets the requirements of the statute;

    2.    The failure of the initial Complaint to allege the sending of a chapter 93A demand

letter has been cured in the Amended Complaint, which was filed without any objection by the

Defendants;

3.      The Defendants have not cited a single case that supports dismissal of a chapter 93A claim where any defect in the allegations concerning the sending of a demand letter has been cured;

4.      The Amended Complaint sets forth detailed allegations that are more than sufficient to state a viable claim under chapter 93A;

5.      Massachusetts law does not support the dismissal of a chapter 93A claim, which is highly fact-dependent, at the threshold of the case.

## Procedural Background

OPG filed the original Complaint in May 2005 [Docket No. 1].  The Complaint included counts alleging violations of chapter 93A but admittedly did not contain an allegation that a demand letter had been sent to the Defendants.  The Defendants waived service of the Complaint and Summons and filed an Answer on September 12, 2005 [Docket No. 4].  The Defendants did not file a motion to dismiss the chapter 93A claims and did not move for judgment on the pleadings.

On August 16, 2005 (several weeks before the Defendants filed their Answer to the Complaint), OPG sent a demand letter to the Defendants pursuant to chapter 93A.[1]  On September 13, 2005 (one day after the Defendants answered the Complaint), OPG filed a motion for leave to file an Amended Complaint [Docket No. 3].[2]  The motion, which was not opposed by the Defendants, was allowed on October 19, 2005.  On October 23, 2005, OPG filed and

---

[1]  OPG did not send its chapter 93A demand letter before filing suit because there was some risk that, if it had waited to file suit until after sending the demand letter, its other claims might be susceptible to a motion to dismiss on statute of limitations grounds.

[2]  Because the Defendants did not file their answer electronically, OPG's motion to amend was docketed before the answer, even though the answer had been filed first.

served its Amended Complaint [Docket No. 8], which specifically included an allegation that a

demand letter had been sent, with the demand letter attached as an exhibit.  On October 27, 2005,

the Defendants filed an Answer to the Amended Complaint [Docket No. 9].

On December 29, 2005, the Defendants filed their joint motion for partial judgment on

the pleadings with respect to the chapter 93A counts [Docket No. 11].

### Relevant Facts

The facts relevant to the Defendants' motion, as set forth in the Amended Complaint and

in the chapter 93A demand letter attached as an exhibit thereto, are as follows.  OPG is the court-

appointed legal guardian of Alexis Burns ("Alexis").  Alexis is a minor and suffers from cerebral

palsy that resulted from a difficult delivery at the time of her birth, in 1988.

In May 1999, Andrew C. Meyer, Jr., Esquire of Lubin & Meyer, P.C. received payment

on a final judgment in favor of Alexis in a medical malpractice action.  The net recovery for

Alexis after deducting fees and expenses was more than $2.4 million (the "Trust Funds").  Later

that month, Meyer contacted the defendant Hale and Dorr LLP ("H&D") and asked H&D to

create a special needs trust ("SNT") for the benefit of Alexis and to invest and manage the Trust

Funds for her benefit in accordance with the legal requirements for an SNT.  H&D agreed to

establish a trust for Alexis (the "Trust") and further agreed to have the Trust Funds invested and

managed through H&D's investment affiliate, the defendant Haldor Investment Advisors

Limited Partnership ("Haldor").

Even before receiving the Trust Funds, attorneys at H&D drafted a declaration of trust,

entitled "Alexis Janet Burns 1999 Irrevocable Trust," for the purpose of establishing an SNT.

Mr. Meyer delivered the Trust Funds to H&D in the form of a check payable to "David Burns,

Trustee," accompanied by a covering letter from Mr. Meyer to John Fabiano, Esquire at H&D.

In his letter, Meyer described the check as representing "the proceeds due to the Alexis Burns

3

Trust from the verdict." Alexis's father, David Burns ("David"), picked up the check and the letter from Mr. Meyer and met with attorneys at H&D to deliver the check. H&D and Haldor then opened an account under the name "Burns, Alexis AG" (the "Account"), and the Trust Funds were deposited to the Account.

Under the terms of the declaration of trust, as drafted and revised by H&D, two trustees were to be appointed for the Trust: David and another person who would act as an independent trustee. The trustees were to make distributions to or for the benefit of the Plaintiff during her lifetime, for the purpose of supplementing the benefits available to her under the Medicaid and Supplemental Security Income programs.[3]

However, the attorneys at H&D failed to have David sign the declaration of trust, so that the SNT was never created. Nevertheless, H&D and Haldor made repeated distributions of moneys to David from the Account. In less than four years, they disbursed to David amounts totaling $1.6 million, or two-thirds of the principal that was to provide for Alexis's needs for the rest of her life. They did so without requiring David to demonstrate that he would use the funds for the benefit of Alexis in accordance with the terms of the Trust. They also did not require David to document that he was, in fact, spending the funds appropriately.

Most of the distributions were made in the form of wire transfers, either to accounts under David's control, or to an account in the name of his then-girlfriend Dena Bouzianis

---

[3] An SNT is a form of trust that contains special provisions necessary to insure that the funds can be used for the benefit of a person with special needs, but without jeopardizing that person's eligibility for public assistance, including Medicaid and Supplemental Security Income benefits. Management of an SNT should be entrusted to an independent trustee, who is responsible for ensuring not only that the funds are invested and spent appropriately but also that any expenditures are documented, so as to be able to demonstrate that the rules and restrictions governing SNT's have not been violated. Furthermore, because Alexis is so young, it was

(transfers totaling $161,300), or to an account in the name of R&K Forrestry (transfers totaling $214,200).[4]  The documents in H&D's own files reflect that H&D and Haldor made virtually no effort to determine what the funds would be used for and never documented how the funds were actually spent.  Moreover, few if any of those funds were actually expended for the benefit of Alexis.

Furthermore, Haldor had a duty to invest the Trust Funds prudently, in a manner that would earn a reasonable return without putting the principal amount of the trust assets at significant risk.  Haldor, however, did not invest the trust assets in a prudent manner.  As a result, the value of the Trust Funds declined significantly after May 27, 1999.  As of July 31, 2003, when OPG had been appointed as guardian for Alexis and was taking control of the remaining Trust Funds, the balance in the Account was approximately $645,000.

Moreover, neither H&D nor Haldor nor H&D Capital ever prepared or filed income tax returns for the assets held in the Account.  Nor, to the best of OPG's knowledge, did any of the Defendants advise David that tax returns were required to be filed with respect to the assets held in the Account.  As a result, tax returns were not filed in a timely manner.

### Argument

### I.    THE STANDARD OF REVIEW ON A RULE 12(c) MOTION IS THE SAME AS FOR A MOTION TO DISMISS.

The standard of review for a Rule 12(c) motion for judgment on the pleadings is the same as the standard for a Rule 12(b)(6) motion to dismiss:

---

important that the Trust Funds be invested carefully so as to have funds available for Alexis's needs throughout her long life expectancy.

[4]  Some transfers were for as much as $100,000.

> The standard for evaluating a Rule 12(c) motion for judgment on the pleadings is essentially the same as that for deciding a Rule 12(b)(6) motion. "[T]he trial court must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor." Rivera-Gómez v. de Castro, 843 F.2d 631, 635 (1st Cir. 1998) (internal citations omitted). The motion should not be granted "unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." Id.

Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005).[5]

Here, OPG has alleged in its Amended Complaint a viable cause of action under chapter 93A. As explained below, the two premises upon which the Defendants' motion is based are both faulty. Therefore, their motion must be denied.

## II.    THERE IS NO LEGAL BASIS FOR DISMISSING A CHAPTER 93A CLAIM IN AN AMENDED COMPLAINT BECAUSE OF A DEFECT IN THE ORIGINAL COMPLAINT THAT HAS BEEN CURED.

The Defendants' first faulty premise is that OPG's failure to allege in its original Complaint that a demand letter had been sent cannot be cured by amending the Complaint. The Massachusetts Supreme Judicial Court squarely addressed the question three decades ago, in York v. Sullivan, 369 Mass. 157, 338 N.E.2d 341 (1975). In York, the plaintiffs sent a demand letter to the defendants pursuant to chapter 93A. Before the statutory 30-day period had run, the plaintiffs filed suit against the defendants on grounds other than chapter 93A. Then, after the 30-day period expired, the plaintiffs filed a second action alleging violations of chapter 93A.

---

[5]  A motion for judgment on the pleadings may be converted into one for summary judgment, but only if the parties have been offered a "reasonable opportunity" to present pertinent summary judgment materials. Conversion is disfavored where, as here, the motion comes shortly after the complaint was filed and discovery is in its infancy. Rubert-Torres v. Hosp. San Pablo Inc., 205 F.2d 472, 475 (1st Cir. 2000). The parties have not submitted any materials outside of the pleadings, and the Defendants have not contended that their motion should be treated as one for summary judgment.

The SJC reversed the lower court's ruling that the plaintiffs had waived their chapter 93A claims by bringing non-statutory claims before the 30-day period had expired, and then went on to state:

> Finally, even if the first suit could be treated as a suit under c. 93A, subject to dismissal because it was begun too soon, such a dismissal should not ordinarily bar a suit brought after the thirty days had run. . . . Even if dismissal were proper, it should not be 'on its merits' or 'with prejudice.'

369 Mass. at 164-65 (citations omitted).  Thus, even if the chapter 93A claim asserted by OPG were to be dismissed now, it would be without prejudice, so that OPG would be entitled to re-file its chapter 93A claim.  In short, allowance of the Defendants' motion on this ground is not proper and, even if it were, it would be futile.

The cases cited by the Defendants are not to the contrary.  In City of Boston v. Aetna Life Ins. Co., 399 Mass. 569, 506 N.E.2d 106 (1987), the lower court had allowed a motion for summary judgment on the ground that the plaintiff had not alleged the sending of a demand letter.  Because the present case is only at the initial pleadings stage, and because such an allegation is contained in OPG's Amended Complaint, the Aetna case is inapposite.

Similarly, in Spring v. Geriatric Authority of Holyoke, 394 Mass. 274, 475 N.E.2d 287 (1985), the case had gone to verdict at trial.  The SJC upheld the allowance of a motion for JNOV on the plaintiff's chapter 93A claim because the plaintiff had failed to allege (or prove) the existence of a demand letter.[6]  Here, however, the demand letter has been alleged and is attached to the Amended Complaint.

Furthermore, the decision in Tarpey v. Crescent Ridge Dairy, Inc., 47 Mass. App. Ct. 380, 713 N.E.2d 975 (1999), which the Defendants relegate to a footnote, is entirely consistent

---

[6] Jacobs v. Eck, 1985 Mass. App. Div. 206 (1985) is also a post-trial appeal.

with York and squarely contradicts the Defendants' position.  In Tarpey, the plaintiff filed a complaint that did not allege a violation of chapter 93A.  More than a year later, the plaintiff sent a chapter 93A demand letter to the defendants, and then obtained leave to file a (second) amended complaint asserting a claim under chapter 93A.  The Appeals Court held that there was no error in allowing the chapter 93A claims to be filed.  47 Mass. App. Ct. at 391.  The court went on to state that:

> The thirty-day requirement is not necessarily jurisdictional.  See York v. Sullivan, 369 Mass. 157, 163 (1975) ("[T]he thirty day requirement . . . is not jurisdictional in the sense that a party cannot waive it . . . . Demand before suit is often a fruitless ceremony."). Further, in such cases, dismissal does not "ordinarily bar a suit brought after the thirty days ha[ve] run." Id. at 164.  See Fredericks, supra [40 Mass. App. Ct.  713] at 716-717 (rejecting "jurisdictional" argument for 93A demand letter and citing York v. Sullivan, supra).

47 Mass. App. Ct. at 391-92.  Thus, the holdings in York and Tarpey constitute an unqualified rejection of the Defendants' position.[7]

Furthermore, the U.S. Supreme Court has stated emphatically that the courts should not allow technicalities to be used to avoid making a decision on the merits:

> It is too late in the day and entirely contrary to the spirit of the Federal Rules of Civil Procedure for decisions on the merits to be avoided on the basis of such mere technicalities.  "The Federal Rules reject the approach that pleading is a game of skill in which one misstep by counsel may be decisive to the outcome and accept the principle that the purpose of pleading is to facilitate a proper decision on the merits." Conley v. Gibson, 355 U.S. 41, 48 (1957).  The Rules themselves provide that they are to be construed "to secure the just, speedy, and inexpensive determination of every action."  Rule 1.

---

[7]  Presumably, the Defendants did not move to dismiss OPG's original Complaint because they had already received OPG's demand letter ( almost a full month before they answered the complaint) and knew that, under York and Tarpey, OPG would be granted leave to file an amended complaint setting forth the same chapter 93A claim.

The Court of Appeals also erred in affirming the District Court's denial of petitioner's motion to vacate the judgment in order to allow amendment of the complaint.  As appears from the record, the amendment would have done no more than state an alternative theory for recovery.

Rule 15 (a) declares that leave to amend "shall be freely given when justice so requires"; this mandate is to be heeded.  See generally, 3 Moore, Federal Practice (2d ed. 1948), §§ 15.08, 15.10.  If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason - such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. - the leave sought should, as the rules require, be "freely given."

<u>Foman v. Davis</u>, 371 U.S. 178, 181-82 (1962).[8]

Here, there has been no undue delay, no bad faith, and no dilatory motive, nor have the

Defendants suggested any.  Instead, they seek to bar OPG from pursuing its chapter 93A claim

on a mere technicality, even though the original defect has been cured, without any prejudice to

the Defendants.  Such relief is not permitted under the rules.

## III.   THE COUNTS ALLEGING VIOLATIONS OF CHAPTER 93A STATE VIABLE CAUSES OF ACTION.

The Defendants' second faulty premise is that OPG's chapter 93A allegations fail to state

a viable claim.  Their premise is based upon two erroneous arguments:  first, that the claims are

defective because they "do not allege any fraud, deceit or misrepresentation," and, second, that

allegations of negligence do not state a claim for unfair or deceptive acts in violation of

chapter 93A (Defendants' Memorandum at 3).  Neither of these arguments warrants dismissal of

OPG's chapter 93A claims.

---

[8]  See also, <u>Beaupre v. Cliff Smith Assoc.</u>, 50 Mass. App. Ct. 480, 484 n. 8 (2000) ("the rules of civil procedure are instruments for the promotion of justice (Mass. R. Civ. P. 1, as amended, 423 Mass. 1404 [1996]), not the exaltation of mere technicalities."

A.     **The Facts Alleged In The Amended Complaint Are More Than Sufficient To Constitute Conduct That Is Unfair, In Violation Of Chapter 93A.**

It is well established under the case law construing chapter 93A that conduct can violate chapter 93A without constituting fraud, deceit or actionable misrepresentations.  <u>Service Publications, Inc. v. Goverman</u>, 396 Mass. 567, 578, 487 N.E.2d 520 (1986).  Allegations of fraud or misrepresentation are certainly sufficient to constitute a viable chapter 93A claim, and such conduct may constitute a violation of chapter 93A that is knowing or willful so as to warrant the imposition of punitive damages.  However, conduct can violate chapter 93A because it is unfair, even if not deceptive.

The range of conduct that can constitute a violation of chapter 93A is much broader than conduct that rises to the level of fraud:

> Chapter 93A liability may exist if the defendant's conduct falls "within at least the penumbra of some common-law, statutory, or other established concept of unfairness" or is "immoral, unethical, oppressive or unscrupulous."  <u>PMP Assoc., Inc. v. Globe Newspaper Co.</u>, 366 Mass. 593, 321 N.E.2d 915, 917 (1975).  Thus, proof of a common law tort, while not necessary for liability, see <u>Massachusetts Farm Bureau Federation, Inc. v. Blue Cross of Massachusetts, Inc.</u>, 403 Mass. 722, 532 N.E.2d 660, 664 (1989) ("a violation of G.L. c. 93A, § 11, need not be premised on a violation of an independent common law or statutory duty"), may be sufficient.  See <u>Anthony's Pier Four, Inc. v. HBC Assoc.</u>, 411 Mass. 451, 583 N.E.2d 806, 822 (1991) (breach of implied contractual duty of good faith and fair dealing gave rise to Chapter 93A liability); <u>VMark Software, Inc. v. EMC Corp.</u>, 37 Mass.App.Ct. 610, 642 N.E.2d 587, 594 (1994) (intentional misrepresentation provided basis for Chapter 93A liability).

<u>Cambridge Plating Co., Inc. v. Napco, Inc.</u>, 85 F.3d 752, 769 (1st Cir. 1996).  <u>Accord</u>, <u>Sears, Roebuck & Co. v. Goldstone & Sudalter</u>, 128 F.3d 10, 19 (1st Cir. 1997) (finding of c. 93A violation does not depend on knowing scheme to defraud).

Here, the Amended Complaint clearly alleges conduct that falls well within the penumbra of established concepts of unfairness, for several reasons.  First, the Defendants – who have significant experience in establishing and overseeing SNT's and other trust accounts – knew or

should have known that it was essential to establish the SNT before any of the Trust Funds were expended, so as to preserve Alexis's right to continue receiving public assistance. Yet the Defendants began disbursing funds to Alexis's father, David, before establishing the SNT, and they continued to make major disbursements to him even when he repeatedly ignored their requests that he sign the declaration of trust.

Second, H&D and Haldor knew or should have known that, in order to preserve Alexis's eligibility for public assistance, it was essential that any Trust Funds disbursed on her behalf be spent only on the categories of goods and services permitted under the applicable rules. Yet they repeatedly made major disbursements to David without requiring any explanation of how the funds would be spent and without requiring David to document afterwards how the funds were actually spent.

Third, it was much more than mere negligence for the Defendants to disburse two-thirds of the principal to David in less than four years, when it was necessary to manage those funds conservatively so that they would be available to support Alexis throughout her lifetime. Moreover, the Defendants did so without receiving any confirmation that David had the legal authority to act on Alexis's behalf with respect to the Trust Funds. Because the declaration of trust was not executed, he never became trustee. Nor was he appointed by the probate court to act as guardian for Alexis.

Fourth, to the extent that Haldor invested the Trust Funds aggressively, thereby incurring a substantial loss of principal during the stock market downturn in 2000, such conduct was in reckless disregard of its fiduciary duty to Alexis. Discovery may also disclose additional conduct that violates chapter 93A.

In determining whether conduct is unfair so as to violate chapter 93A, the Court "must evaluate the equities between the parties. . . .  What a defendant knew or should have known may be relevant in determining unfairness. . . .  Similarly, a plaintiff's conduct, his knowledge, and what he reasonably should have known may be factors in determining whether an act or practice is unfair."  Swanson v. Bankers Life Co., 389 Mass. 345, 349, 450 N.E.2d 577 (1983) (citations omitted).

Based upon the allegations in the Amended Complaint, those equities tip sharply in OPG's favor.  The Defendants were highly sophisticated and were in the business of providing legal and asset management services.  That is why Attorney Meyer entrusted the Trust Funds to H&D in the first place.  In contrast, Alexis was and is a minor, totally reliant on the Defendants to manage the Trust Funds properly for her benefit.  Viewing the facts in the light of these equities, it cannot be said that under no circumstances could a finder of fact conclude that the Defendants conduct did not violate chapter 93A.  Therefore, the Defendants' motion must be denied.

**B.    OPG's Allegations Under Chapter 93A Are Not Founded Only Upon The Defendants' Negligence.**

The Defendants also seem to presume that, because OPG has alleged that the Defendants' conduct was negligent, OPG's allegation that their conduct also violated chapter 93A is premised only on negligent conduct.  That is simply not the case, and there is nothing in the Amended Complaint itself to support such a presumption.

The Defendants contend that mere negligence does not support a viable chapter 93A claim, and they seek to characterize OPG's claims under chapter 93A as alleging nothing more than negligence or legal malpractice.  It is certainly true that there is no per se liability under

chapter 93A for conduct that is negligent. Meyer v. Wagner, 429 Mass. 410, 424, 709 N.E.2d 784 (1999).

However, the question is not whether the conduct is either negligent or intentional; instead, the issue is whether the conduct is unfair or deceptive. Conduct can be negligent without being unfair, as in Meyer, and it can even be deceptive without being unfair (especially if the parties are equally sophisticated). Yet conduct can be unfair, even if there is no malicious intent. Sears, Roebuck & Co. v. Goldstone & Sudalter, 128 F.3d 10, 19 (1st Cir. 1997). That is especially true where, as here, there is a major disparity in the equities between the parties.

Furthermore, the conclusion in Meyer and in the other cases cited by the Defendants that certain negligent conduct was not unfair was made either on a motion for summary judgment or at trial, after the parties had had an opportunity to conduct discovery and to present a full range of evidence. OPG is entitled to that same opportunity, especially because chapter 93A claims are highly fact-dependent. Spence v. Boston Edison Co., 390 Mass. 604, 615-16, 459 N.E.2d 80 (1983) ("whether Edison's conduct was unfair is a matter of fact however, and the BHA should have a chance to prove its claim").

Undoubtedly, the Defendants will move for summary judgment on OPG's chapter 93A claims at the conclusion of discovery. That will be an appropriate occasion to evaluate more carefully the Defendants' culpability under chapter 93A. However, there is simply no basis under either Massachusetts or federal law to dismiss OPG's chapter 93A claims before it even has a chance to conduct discovery.[9]

---

[9] Each side has served written discovery requests on the other side only within the last few weeks, and neither side has yet served responses to the other side's discovery requests. No depositions have yet been scheduled or conducted.

**<u>Conclusion</u>**

For the foregoing reasons, the Joint Motion of All Defendants for Partial Judgment on the

Pleadings, on Counts 13, 14, 15, 16, and 17 should be denied.

ALEXIS J. BURNS by her legal guardian,
OFFICE OF PUBLIC GUARDIAN

By her attorneys,


  /s/ R. Alan Fryer
R. Alan Fryer (BBO# 180830)
Dorothy M. Bickford (BBO# )
BADGER DOLAN PARKER & COHEN
One State Street
Boston, MA  02109
(617) 482-3030

94572

<u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS
SERVED UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY MAIL.


  01/13/06                          /s/  R. Alan Fryer
Date                              Signature

14