United States District Court
District of Massachusetts

|  |  |
|---|---|
| ALEXIS J. BURNS, by and through her legal guardian, OFFICE OF PUBLIC GUARDIAN,<br><br>Plaintiff,<br><br>v.<br><br>HALE AND DORR LLP, WILMER CUTLER PICKERING HALE AND DORR LLP, HALDOR INVESTMENT ADVISORS LTD. PARTNERSHIP and HALE AND DORR CAPITAL MGMT. LLC,<br><br>Defendants. | Civil Action No.<br>05-11113-NMG |

MEMORANDUM & ORDER

GORTON, J.

This lawsuit was commenced by the Office of Public Guardian ("the OPG") on behalf of the plaintiff, Alexis J. Burns ("Burns"), against the law firm Hale and Dorr LLP ("H&D"), its successor Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer"), Haldor Investment Advisors LP ("Haldor") and its successor Hale and Dorr Capital Management LLC ("H&D Capital").

I.  **Background**

Burns, a young woman who suffers from cerebral palsy which resulted from her delivery, obtained a net recovery in May, 1999, of approximately $2.5 million from a lawsuit against physicians who had allegedly committed medical malpractice in connection

-1-

with her birth. Acting on her behalf, Burns's attorney at the time entered into an agreement with H&D whereby that firm was to create a trust for her benefit ("the Trust"). According to the agreement, Burns's recovery from the lawsuit was to constitute the Trust property ("the Trust Funds").

H&D promptly drafted a declaration of trust ("the declaration") which provided that Haldor would manage the investment of the Trust Funds and that two trustees would be appointed to make distributions for the benefit of Burns during her lifetime. Burns's father, David Burns ("Mr. Burns"), was to be one trustee whereas the other was to be independent. The Trust Funds were delivered to H&D and deposited into an account. Although the declaration was to be signed by Mr. Burns as the declarant, and by Mr. Burns and the other trustee in their capacities as trustees, Mr. Burns never signed the declaration.

Despite their failure to have the declaration formally executed, Haldor and/or H&D distributed approximately $1.6 million from the Trust to Mr. Burns, at his request, between May 27, 1999 and April 22, 2003. Plaintiff alleges that defendants disbursed those funds to Mr. Burns without requiring him to demonstrate that the money would be used for his daughter's benefit. Furthermore, Mr. Burns is accused of having expended little, or none, of the disbursements for plaintiff's benefit. As of July 31, 2003, the balance of the Trust was approximately

$640,000. In August, 2003, the Trust assets were transferred to an account under the control of the OPG.

Burns filed an initial complaint against defendants in May, 2005, asserting counts for negligence, breach of fiduciary duty, unjust enrichment, money had and received and violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (hereinafter, "Chapter 93A"). The purported liability of Wilmer and H&D Capital is premised, at least in part, on their status as successors-in-interest to H&D and Haldor, respectively. Plaintiff filed an amended complaint in October, 2005.

## II.  Discussion

Defendants assert that they are entitled to judgment on the pleadings with respect to plaintiff's Chapter 93A claims against them on the grounds that 1) plaintiff failed to make a timely demand as required by the statute and 2) her allegations do not support an inference of liability.

### A.  Legal Standard

In considering a motion for judgment on the pleadings, a court is guided by the standard it applies to motions to dismiss for failure to state a claim upon which relief can be granted. The court "must accept all of the nonmovant's well-pleaded factual averments as true, and draw all reasonable inferences in his favor". Pasdon v. City of Peabody, 417 F.3d 225, 226 (1st Cir. 2005) (quoting Rivera-Gomez v. de Castro, 843 F.2d 631, 635

(1st Cir. 1998)) (internal citations omitted). The movant cannot prevail "unless it appears beyond doubt that the [nonmovant] can prove no set of facts in support of his claim which would entitle him to relief". Id.

Review of motions for judgment on the pleadings is, as its name suggests, limited to the pleadings and thus,

> [o]rdinarily a court may not consider any documents that are outside of the complaint, or not expressly incorporated therein, unless the motion is converted into one for summary judgment.

Alternative Energy, Inc. v. St. Paul Fire and Marine Ins. Co., 267 F.3d 30, 33 (1st Cir. 2001) (citation omitted).

### B. Demand Requirement

Chapter 93A, § 2 declares as unlawful all "unfair or deceptive acts or practices in the conduct of any trade or commerce". As a prerequisite to commencing a legal action under that statute, the plaintiff must deliver to the purported violator a "written demand for relief" which identifies the claimant and the allegedly wrongful conduct at least 30 days prior to the filing of a complaint. Chapter 93A, § 9(3). The purpose of the demand requirement is twofold: to encourage settlement and to limit the plaintiff's damages in the event that a reasonable settlement offer is rejected. See Thorpe v. Mut. of Omaha Ins. Co., 984 F.2d 541, 544 (1st Cir. 1993) (citing Slaney v. Westwood Auto, Inc., 322 N.E.2d 768, 779 (Mass. 1975)).

Here, Burns did not send a demand letter to defendants prior to filing her initial complaint in May, 2005. She did send a letter on August 16, 2005, however, which preceded the filing of defendants' answer (on September 12, 2005) as well as her amended complaint (in October, 2005). The sole basis for plaintiff's motion to amend her complaint, to which defendants offered no opposition, was to perfect her Chapter 93A claim. Plaintiff now contends that the August demand letter, in combination with her amended complaint, effectively remedied the initial procedural defect. Defendants demur, asserting that the demand requirement is a condition precedent compliance with which cannot be cured after suit is filed.

Massachusetts courts have strictly adhered to Chapter 93A's demand requirement. See, e.g., City of Boston v. Aetna Life Ins., 506 N.E.2d 106, 109 (Mass. 1987) (summary judgment on Chapter 93A claim affirmed because "[t]he failure of the City to allege the sending of a demand letter is fatal to its ... claim"). Nevertheless, the circumstances of this case differ from other cases involving noncompliance with the demand requirement. Unlike cases in which the plaintiff made no attempt to cure a failure to deliver a demand letter, Burns sent such a letter nearly one month prior to the filing of defendants' answer and thereafter moved to amend her complaint in order to plead that demand.

Although there are distinctions to which defendants refer, this case is substantively similar to <u>Tarpey</u> v. <u>Crescent Ridge Dairy, Inc.</u>, 713 N.E.2d 975 (Mass. App. Ct. 1999), in which a plaintiff was permitted to amend his complaint to add a Chapter 93A claim despite not having delivered a demand letter prior to filing the initial suit. The court in the <u>Tarpey</u> case concluded that the demand requirement had been met because 1) the contents of the letter were adequate, 2) it served its purpose of encouraging the offer of a settlement and 3) the plaintiff did not amend his complaint until more than 30 days had elapsed from delivery of his demand. Here, too, the Court concludes that plaintiff's letter was adequate and saisfied the purpose of the demand requirement.

### C.  **Merits**

Defendants also contend that they cannot be liable on the ground that Burns has, at most, alleged negligent conduct which was neither "unfair" nor "deceptive" and does not, therefore, constitute a violation of Chapter 93A. Burns responds that her allegations go beyond mere negligence to imply "unfair" conduct as well.

To prevail on her Chapter 93A claim, Burns must show that defendants' acts

> fell 'within at least the penumbra of some common-law, statutory, or other established concept of unfairness,' or were 'immoral, unethical, oppressive or unscrupulous' ....

Boyle v. Int'l Truck & Engine Corp., 369 F.3d 9, 15 (1st Cir. 2004) (citations omitted).  Burns must also establish that the alleged violation(s) caused her substantial injury.  See Mass. Eye & Ear Infirmary v. QLT Phototherapeutics, Inc., 412 F.3d 215, 243 (1st Cir. 2005) (citation omitted).

Negligent conduct, standing alone, does not render an actor liable under Chapter 93A.  Squeri v. McCarrick, 588 N.E.2d 22, 25 (Mass. App. Ct. 1992).  Thus, liability premised upon negligent conduct is available only where the negligence is "paired with an unfair or deceptive act or practice", i.e., "negligence plus rascality".  Damon v. Sun Co., Inc., 87 F.3d 1467, 1484 n.10 (1st Cir. 1996) (citing Squeri, supra, and other cases).  See also Swanson v. Bankers Life Co., 450 N.E.2d 577, 580 (Mass. 1983) ("[N]ot every negligent act is unfair or deceptive and thus unlawful under [Chapter 93A].").  Where a claimant alleges unfair as opposed to deceptive conduct, the court is to consider the "equities between the parties" including what each knew or should have known.  Id. (citations omitted).

Defendants cite a number of cases in which Chapter 93A liability was precluded notwithstanding allegations sufficient to support claims for professional malpractice.  Burns suggests that those cases do not compel a decision adverse to her at this juncture because her allegations at least imply unfair conduct. She contends, for example, that defendants exceeded merely

negligent behavior when they disbursed two-thirds of the Trust principal to Mr. Burns without any confirmation that he would act on his daughter's behalf. Plaintiff reckons further that Haldor's investment of the Trust Funds, which incurred heavy losses, may have constituted reckless disregard of its fiduciary duty. Finally, Burns reasons that a decision on her Chapter 93A claim would be premature given the incompleteness of discovery. The Court is persuaded by plaintiff's argument.

### ORDER

For the foregoing reasons, the Joint Motion of All Defendants for Partial Judgment on the Pleadings (Docket No. 11) is **DENIED,** as is their request for oral argument (Docket No. 14).

**So ordered.**

                                      /s/ Nathaniel M. Gorton
                                      Nathaniel M. Gorton
                                      United States District Judge

Dated: July 21, 2006