UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXIS J. BURNS by and through her legal guardian, OFFICE OF PUBLIC GUARDIAN<br>    Plaintiff<br><br>v.<br><br>HALE AND DORR LLP, et al.,<br>    Defendants | CIVIL ACTION NO. 05-11113NMG |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S**
**MOTION TO FURTHER AMEND SCHEDULING ORDER**

The Plaintiff, Alexis J. Burns ("Alexis"), by and through her legal guardian, the Office of Public Guardian ("OPG"), submits this memorandum in support of Plaintiff's Motion to Further Amend Scheduling Order, filed herewith.

In further support of her motion, Alexis also relies upon the previously filed Affidavit of R. Alan Fryer in Support of Motion for Leave to File Memorandum [Docket No. 27] (the "Affidavit of Counsel").

**Relief Requested**

By her motion, Alexis asks that the Court extend the deadline for amending the pleadings, as set forth in the Court's Scheduling Order [Docket No. 10], so as to permit her to add causes of action for conversion and breach of contract to the Amended Complaint.[1]  As

---

[1] Plaintiff's Motion for Leave to Further Amend Complaint [Docket No. 22] was filed on October 25, 2006 and is pending.  In that motion, Alexis seeks to add causes of action for conversion and breach of contract, to update certain facts describing Plaintiff's legal status, to allege a few additional facts uncovered during discovery, and to make minor, non-substantive corrections to a few other allegations.

explained below, the requested relief is necessary because some of the facts necessary to support the new causes of action were not known to Alexis or her counsel until recently, long after the deadline established in the Scheduling Order had passed, and those newly discovered facts provide support for two additional causes of action against the Defendants: for conversion and for breach of contract.

## Background

OPG is Alexis's court-appointed legal guardian. Alexis is 18 years old and suffers from cerebral palsy as a result of a difficult delivery at the time of her birth.

In 1992, Andrew C. Meyer, Jr., Esquire ("Meyer") of Lubin & Meyer, P.C. brought a medical malpractice action on behalf of Alexis and her parents. In May 1999, after a plaintiff's verdict, Meyer obtained a multi-million dollar recovery on a final judgment solely in favor of Alexis. The net amount payable for the benefit of Alexis after deducting fees and expenses was more than $2.4 million (the "Proceeds").

That same month, Meyer and Alexis's father, David Burns ("Mr. Burns"), arranged for the Defendant Hale and Dorr LLP ("Hale and Dorr") to create a special needs trust ("SNT") for the benefit of Alexis.[2] The Proceeds were to be held in trust under the terms of the SNT and were to be invested and managed for Alexis's benefit by Hale and Dorr's investment subsidiary, the Defendant Haldor Investment Advisors LP ("Haldor").

Even before receiving the Proceeds, attorneys at Hale and Dorr met with Mr. Burns on May 20, 1999 and drafted a declaration of trust, initially titled "Alexis Janet Burns 1999 Irrevocable Trust," for the purpose of establishing the SNT. A week later, on May 27, 1999,

---

[2] An SNT is a form of trust that contains special provisions necessary to insure that the Proceeds can be used for the benefit of a person with special needs, but without jeopardizing that person's eligibility for public assistance, including Medicaid and Supplemental Security Income benefits.

Meyer delivered the Proceeds to Hale and Dorr by messenger, in the form of a check payable to "David Burns, Trustee" (the "Check") with a covering letter describing the Check as "the proceeds due to the Alexis Burns Trust from the verdict."

That same day, Mr. Burns met again with attorneys at Hale and Dorr and apparently endorsed the Check. Hale and Dorr and Haldor then opened an account under the name "Burns, Alexis AG" (the "Account"), and the Proceeds were deposited to the Account.

Hale and Dorr and Haldor failed to have Mr. Burns sign the declaration of trust. Nevertheless, they made repeated distributions of moneys to Mr. Burns from the Account. In less than four years, they disbursed to Mr. Burns amounts totaling more than $1.6 million, or two-thirds of the principal that was intended to provide for Alexis's needs for the rest of her life. They did so without requiring Mr. Burns to demonstrate that he would use the funds for the benefit of Alexis. They also did not require Mr. Burns to document in any way that he was, in fact, spending the funds for Alexis's benefit.

## History of Pleadings and Discovery

The Complaint in this action was filed on May 27, 2005 [Docket No. 1]. On August 16, 2005, Alexis made a written demand on the Defendants for relief pursuant to Mass. Gen. Laws, chapter 93A (the "Demand Letter"). On September 12, 2005, the Defendants filed their Answer to the Complaint [Docket No. 4].[3]

That same day, Alexis filed a motion to amend her Complaint in order to add allegations with respect to the Demand Letter [Docket No. 3]. The motion was unopposed, and the Court allowed it on October 19, 2005. Alexis promptly filed the Amended Complaint four days later [Docket No. 8]. The Defendants filed their Answer on October 27, 2005 [Docket No. 9].

---

[3] The Defendants filed an answer without being served with a summons.

On October 23, 2005, the parties filed a joint statement setting forth a proposed pre-trial schedule [Docket No. 6].  On November 16, 2005, the Court entered a Scheduling Order [Docket No. 10] that incorporated the proposed schedule, with minor changes.  The Scheduling Order established the following deadlines for pleadings and discovery:

| | |
|---|---|
| 12/12/05 | Automatic disclosures |
| 01/31/06 | Amended and supplemental pleadings |
| 12/31/06 | Written discovery requests |
| 01/31/06 | Responses to discovery requests |
| 04/15/06 | Follow-up written discovery requests |
| 05/17/06 | Responses to discovery requests |
| 09/15/06 | Fact depositions completed |
| 01/15/07 | Expert depositions completed. |

Alexis, after making her initial disclosures pursuant to Rule 26(a)(1) in October 2005, initiated written discovery in December 2005, in compliance with the Scheduling Order.  That written discovery included interrogatories and document requests to the Defendants.  The Defendants served responses to Alexis's discovery requests in February 2006, and produced documents responsive to those requests on various occasions thereafter.

In July 2006, Alexis noticed several depositions, and she noticed additional depositions in August and September.  When it became apparent that, because of scheduling issues, not all of those depositions could be completed by the Scheduling Order's September 15, 2006 deadline for fact discovery, the parties filed a joint motion to modify the Scheduling Order [Docket No. 16] so as to permit completion of the scheduled discovery by September 29, 2006.  That motion was allowed on September 19, 2006.

Near the end of the original deadline for completion of fact depositions, the Defendants expressed a desire to take five additional depositions.  Alexis cooperated with the Defendants in

4

scheduling all five depositions, even though three of them were taken after the extended deadline for completing all fact discovery.[4]

### **What Alexis Learned Through Discovery, And When**

As set forth in the Affidavit of Counsel, Alexis did not know until recently the circumstances under which Meyer retained the Defendants' services and delivered the Proceeds to them.  Affidavit of Counsel, ¶¶ 4, 14.  Of course, Alexis did know, when the Complaint and the Amended Complaint were filed, that Meyer had delivered the Proceeds to Hale and Dorr on May 27, 1999, in the form of the Check, and accompanied by a covering letter.  She also knew that Mr. Burns had met with the Defendants on and before that date, and that the Defendants had prepared a draft of a trust instrument, to be executed by Mr. Burns.

However, Alexis did not know until recently what discussions Meyer had with any representatives of the Defendants, or what, if any, agreements Meyer had entered into with them. Id., ¶¶ 5-6, 13-14.  Nor did she know until recently what transpired at Mr. Burns's meetings with the Defendants, or how the Defendants handled the Check representing the Proceeds that they received from Meyer.  Id., ¶ 10-13.  Moreover, Alexis learned only recently that her assumption that Mr. Burns had picked up the Check for the Proceeds from Meyer and delivered it to the Defendants (as stated in the Demand Letter – see Docket No. 8, Exhibit A) was incorrect.

It was not until Alexis's counsel took Meyer's deposition on August 29, 2006 that Alexis first became aware of the substance of the discussions that Meyer had had with the attorneys at Hale and Dorr in connection with the Proceeds and the trust that was to be established for Alexis's benefit.  Id., ¶¶ 13, 14.  Only then did Alexis discover that Meyer, acting specifically on

---

[4] The Affidavit of Counsel, ¶ 20, states that the Defendants concluded only one of their five depositions before the extended deadline for the completion of fact discovery.  In fact, they concluded two of the five depositions in a timely manner.

5

behalf of Alexis, had actually entered into a contractual agreement with the Defendants for them to establish a trust for the benefit of Alexis, to hold the Proceeds in that trust, and to invest the trust funds through its subsidiary, Haldor.[5]  Id.  Thus, it was not until the end of August 2006 that Alexis became aware of facts that would support a claim for breach of contract.

Similarly, it was only in August 2006 – at depositions taken by Alexis's counsel between August 1 and August 29 – that Alexis learned how the Defendants had mishandled the Check delivered to them by Meyer.  Affidavit of Counsel, ¶¶ 8-13.  That is when Alexis first learned the facts that support her proposed claim for conversion.[6]

## Argument

F.R. Civ. P. Rule 16, Local Rule 16.1, and the Court's Scheduling Order all permit an extension of the deadline for filing amended pleadings upon a showing of good cause.  The facts set forth in the Affidavit of Counsel demonstrate that Alexis has good cause for amending the complaint now.  Furthermore, she is not guilty of undue delay or bad faith.  Nor will allowance of her motion cause any prejudice to the Defendants or interfere with the Court's management of the case in any way.  Therefore, her motion should be allowed.

---

[5] Meyer dealt with two attorneys at Hale and Dorr:  John Fabiano and Michael Fay.  Fabiano testified at his August 1, 2006 deposition that he had no memory of his discussions with Meyer about the creation of a trust for Alexis.  Affidavit of Counsel, ¶ 10.  Fay testified on August 10, 2006 that he did not remember whether he even had any discussions with Meyer about Alexis.  Id., ¶ 11.

[6] The Defendants have never been able to produce of copy of the Check.  Affidavit of Counsel, ¶¶ 5-6.  In March 2006, pursuant to Plaintiff's subpoena, Alexis did obtain a copy of the front side of the Check from Lubin & Meyer, but not the back side, which would have shown any endorsement.  Id., ¶ 7.  Alexis also served a subpoena on State Street Bank and its successor in interest, Citizens Bank, in an attempt to obtain the back side of the Check, but the banks reported that they had destroyed any records that they may have had.

**I.      ALEXIS HAS GOOD CAUSE FOR THE TIMING OF HER MOTION.**

Amendments of pleadings are expressly governed by F.R. Civ. P. Rule 15(a). The rule provides that, after a responsive pleading has been served, "a party may amend the party's pleading only by leave of court or by written consent of the adverse party; and leave shall be freely given when justice so requires."

This Court has construed that provision of Rule 15 to require that, where the moving party "has at least colorable grounds for relief, justice requires allowing amendments unless the movant is guilty of undue delay or bad faith, or if permission to amend would unduly prejudice the opposing party." Cabana v. Forcier, 200 F.R.D. 9, 11 (D. Mass. 2001), citing Foman v. Davis, 371 U.S. 178, 182, 9L.Ed.2d 222, 83 S.Ct. 227 (1962). In Cabana, this Court went on to state that, "[w]here the moving party seeks to add new legal claims, most courts have interpreted the 'colorable grounds' requirement as mandating an inquiry comparable to that undertaken when analyzing a motion to dismiss for failure to state a claim." Id. (citation omitted).

F.R. Civ. P. Rule 16, which deals with pre-trial conferences and scheduling, does not contain any reference to Rule 15. Rule 16(b) does require that a court "enter a scheduling order that limits the time (1) to join other parties and to amend the pleadings . . .." The rule further states that "[a] schedule shall not be modified except upon a showing of good cause and by leave of the district judge . . .." Local Rule 16.1(G) reiterates those requirements, and also states that the showing of good cause must be "supported by affidavits, other evidentiary materials, or references to pertinent portions of the record."

The Court of Appeals for the First Circuit has held that, once the Court has entered a Rule 16 scheduling order, "the liberal default rule [under Rule 15] is replaced by the more demanding 'good cause' standard" of Rule 16. Steir v. Girl Scouts of the USA, 383 F.3d 7, 12

7

(1st Cir. 2004). "This standard focuses on the diligence (or lack thereof) of the moving party more than it does on any prejudice to the party-opponent." Id. (footnote and citation omitted).

Here, as demonstrated above, Alexis has acted diligently. Promptly after learning through discovery that there was evidence to support claims for conversion and breach of contract, she filed her motion to amend the pleadings to add those claims.

The reason for Alexis's failure to comply with the deadline established by the Scheduling Order for amending the pleadings is simple: she did not know all of the facts necessary to allege the new causes of action until she had conducted discovery. It is frequently the case that, during discovery, a party learns of facts that will support additional claims or defenses. Obviously, it is impossible for any party to amend the pleadings on the basis of newly discovered facts before the facts have been discovered. And when the Scheduling Order establishes a deadline for amending the pleadings that pre-dates any opportunity to conduct meaningful discovery, the parties cannot be expected to comply with that deadline where, as here, previously unknown facts that are required in order to assert the additional claims are uncovered through the discovery process. Thus, under any reasonable construction of Rule 16 and Local Rule 16.1, Alexis has good cause for the timing of her request to amend the pleadings.

## II. AMENDMENT OF THE COMPLAINT WILL NOT CAUSE ANY DELAY OR PREJUDICE.

Although the First Circuit has stated that the good cause standard under Rule 16 focuses on the diligence of the moving party, "[p]rejudice to the opposing party remains relevant." O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152, 155 (1st Cir. 2004). Here, however, amendment of the complaint will not prejudice the defendants in any way.

The kinds of prejudice identified by the First Circuit include "a re-opening of discovery with additional costs, a significant postponement of trial, and a likely major alteration in trial

strategy and tactics" due to the proposed addition of another defendant. Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49, 52 (1st Cir. 1998). Here, however, Alexis's proposed amendment would cause no prejudice of any sort:

- In their opposition to Alexis's pending motion to amend, the Defendants themselves do not claim that they would suffer any prejudice if Alexis were allowed to amend the Complaint;

- No additional fact discovery will be required if Alexis's motion is allowed;

- Through no fault of Alexis, fact discovery is still not complete. To the contrary, discovery has been delayed by the Defendants' own conduct. Their recent untimely production of additional documents has required the re-opening of a previously concluded deposition, and documents withheld by the Defendants on grounds of attorney-client privilege are the subject of a pending motion;

- No expert discovery has yet taken place. Preparation of Plaintiff's expert report has been delayed because fact discovery is still incomplete;

- Given that fact discovery is incomplete and expert discovery has not begun, no motions for summary judgment are imminent and no trial is on the horizon, so amendment of the complaint will not cause any scheduling disruptions or the incurring of any significant additional costs.

Thus, the present case is utterly unlike any of the cases cited by the Defendants in their opposition [Docket No. 24] to Alexis's pending motion to amend. For example, Alexis does not seek to add any new defendants. Cf., O'Connell v. Hyatt Hotels of Puerto Rico, 357 F.3d 152 (1st Cir. 2004); Berwind Property Group, Inc. v. Environmental Management Group, 233 F.R.D. 62 (D. Mass. 2005). Nor is there any change in the relief being requested. Cf., Sandcrest Outpatient Services, P.A. v. Cumberland County Hosp. System, Inc., 853 F.2d 1139 (4th Cir. 1988). Discovery is not complete, and summary judgment motions are not imminent. Cf., Grant v. News Group Boston, Inc.,  F.2d  (1st Cir. 1995). No additional discovery will be required, and trial preparation is not substantially complete. Cf., Acosta-Mestre v. Hilton Int'l of Puerto Rico, Inc., 156 F.3d 49 (1st Cir. 1998). Nor is trial imminent. Cf., Stepanischen v. Merchants Despatch Transp. Corp., 722 F.2d 922 (1st Cir. 1983).

9

Instead, the present case is comparable to Cabana v. Forcier, 200 F.R.D. 9, 11 (D. Mass. 2001), where there was no undue delay by the moving party, no undue prejudice to the other parties would result, and the moving party was seeking to assert claims that provided colorable grounds for relief. Here, as in Cabana, there is no danger of prejudice or delay that would justify denying Alexis an opportunity to amend her complaint based upon newly discovered evidence.

### III.    ADJUSTING THE SCHEDULING ORDER TO PERMIT THESE AMENDMENTS WOULD BE CONSISTENT WITH THE POLICIES UNDERLYING THE RULES.

Allowance of Alexis's motion in order to permit her to file the Second Amended Complaint would be entirely consistent with the purposes of the rules. Because amendment of the pleadings will not cause the defendants any prejudice and will not delay resolution of the case or interfere with the Court's case management, allowance of Alexis's motion is entirely consistent with the purposes of Rule 16 and Local Rule 16.1.

Furthermore, where the type of dilatory conduct that Rule 16 is intended to discourage is not present, the traditional liberal standard under Rule 15 of allowing amendment of the pleadings whenever justice so requires should be adhered to. There is no question that, under Rule 15, amendment of the pleadings has been allowed when warranted by newly discovered evidence. Therefore, allowance of this motion and of Alexis's pending motion to amend is consistent with the purposes of Rules 15 and 16 and Local Rule 16.1.

### Conclusion

For the foregoing reasons, the Plaintiff requests that Plaintiff's Motion to Further Amend Scheduling Order and her Motion for Leave to Further Amend Complaint be allowed.

        ALEXIS J. BURNS by her legal guardian,
        OFFICE OF PUBLIC GUARDIAN

        By her attorneys,

         /s/ R. Alan Fryer
        R. Alan Fryer (BBO# 180830)
        Dorothy M. Bickford (BBO# 566380)
        BADGER, DOLAN, PARKER & COHEN
        One State Street, Suite 600
        Boston, MA  02109
        (617) 482-3030

100776

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY THAT A TRUE COPY OF THE ABOVE DOCUMENT WAS SERVED THIS DAY UPON THE ATTORNEY OF RECORD FOR EACH OTHER PARTY BY ELECTRONIC SERVICE THROUGH ECF, AND BY FIRST-CLASS MAIL.

  12/04/06             /s/  R. Alan Fryer
    Date                    Signature