UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| ALEXIS J. BURNS by and through her legal guardian, OFFICE OF PUBLIC GUARDIAN<br><br>Plaintiff,<br><br>v.<br><br>HALE AND DORR LLP, WILMER CUTLER PICKERING HALE AND DORR LLP, HALDOR INVESTMENT ADVISORS LIMITED PARTNERSHIP, and HALE AND DORR CAPITAL MANAGEMENT LLC<br><br>Defendants. | C.A. NO. 05 11113NMG |

**DEFENDANTS' OPPOSITION TO PLAINTIFF'S MOTION TO FILE MEMORANDUM IN SUPPORT OF MOTION TO FURTHER AMEND COMPLAINT**

As set forth in Defendants' previously filed opposition to the Plaintiff's Motion to Further Amend Complaint ("Motion"), the plaintiff moved to amend her Complaint nearly ten months after this Court's January 31, 2006 deadline for filing amendments. Although Local Rule 16.1(G) requires good cause for modification of the deadlines in a Scheduling Order and that such motions be supported by affidavits, record citations or other evidentiary materials, the plaintiff failed to address, let alone satisfy her burden of demonstrating good cause and failed to provide any record support or a supporting memorandum as required by Local Rule 7.1(B)(1) (a "party filing a motion *shall at the same time* file a memorandum of reasons") (emphasis added). The plaintiff now attempts to rejuvenate her moribund Motion by a sleight of hand—the filing of a motion to file a reply memorandum supported by the "affidavit" of her counsel Alan Fryer (the "Fryer Affidavit"), which contains argument, citations to deposition testimony and facts that the

plaintiff now offers in a belated attempt to meet her burden of demonstrating the required good cause. The sleight of hand is unavailing, however, because the latest filing further demonstrates that the plaintiff has known of the facts supporting her proposed claims since initiating this litigation nearly eighteen months ago.

## THE AFFIDAVIT FAILS TO SHOW GOOD CAUSE BECAUSE NO NEW EVIDENCE SUPPORTING THE PROPOSED CLAIMS WAS DISCOVERED DURING THE ANDREW MEYER DEPOSITION OR ANY OTHER DISCOVERY

The Fryer Affidavit argues that good cause exists because during the August 29, 2006 deposition of Andrew Meyer, the plaintiff discovered "new evidence" that the proceeds from the medical malpractice judgment were delivered to the defendants by Mr. Meyer's messenger, rather than by plaintiff's father, David Burns. Affidavit at ¶¶ 14, 16. This claimed new "important element," however, was pleaded by the plaintiff in her original Complaint. Further, the purported supporting testimony is nowhere to be found in Mr. Meyer's testimony, and in fact Mr. Meyer's testimony contradicts this purported "new evidence."[1]

First, the plaintiff pleaded the same "fact" in her original Complaint *over eighteen months ago*. Docket No. 1, at ¶ 13 ("Under a cover letter dated May 27, 1999, Meyer delivered to John Fabiano, Esquire of Hale and Dorr a check in the amount of $2,425,949.96.").[2] Second, none of the deposition excerpts cited by the plaintiff and attached to the Fryer Affidavit contain testimony by Mr. Meyer that he or his messenger delivered the check directly to Hale and Dorr, and review of the <u>entire</u> deposition transcript reveals no such testimony by Mr. Meyer. Finally, Mr. Meyer's actual testimony flatly contradicts the claim in the Fryer Affidavit. In testimony not

---

[1] Further, the plaintiff fails to explain how the method of delivery of a check gives rise to a claim for conversion or breach of contract. Plaintiff continues to offer no supporting authority for her new claims that defendants are liable for conversion and breach of contract based on the fact that a check was delivered to defendants by messenger.

[2] Plaintiff pleaded the same in the first Amended Complaint. Docket No. 8, at ¶ 13.

contained in the excerpts attached to the Fryer Affidavit, Mr. Meyer testified that he had no memory of how the check was delivered, but that he guessed that he gave the check to David Burns, who "took it over to Hale and Dorr." Meyer Dep. 20:23-21:19, Exhibit A. Thus, the assertion that the proposed conversion claim is based on newly discovered evidence is flatly contradicted by the plaintiff's own pleadings and the very deposition on which the Fryer Affidavit claims to rely.

Similarly contradicted by the record is the claim in the Fryer Affidavit that the plaintiff knew of no facts supporting a potential breach of contract claim until Mr. Meyer testified on August 29, 2006, that he told certain Hale and Dorr attorneys that a trust needed to be created to protect the funds for Alexis Burns, and that there was "an understanding that a trust would be created." Affidavit at ¶ 13. The original Complaint, the Amended Complaint, and Plaintiff's Opposition to Defendants' Motion for Partial Judgment on the Pleadings, all allege that there was an "understanding that a trust would be created." See Docket No. 1, at ¶ 11; Docket No. 8, at ¶ 11; Docket No. 13, at 3. Further, since the inception of this suit, the plaintiff has asserted that there was an "agreement" between Mr. Meyer and Hale and Dorr. See Docket No. 1, at ¶ 11 ("Meyer, on behalf of the plaintiff, entered into an agreement with Hale and Dorr to have Hale and Dorr create a so-called Special Needs Trust"); Docket No. 8, at ¶ 11 (same); Docket No. 13, at 3 ("Meyer ... asked H&D to create a special needs trust ... H&D agreed"). Thus, Mr. Meyer's deposition adds nothing new to this allegation and fails to provide any support for the plaintiff's belated claim that there is good cause to amend the complaint long after the time provided in the Scheduling Order because of facts uncovered for the first time in discovery. Rather, 1) all of the claimed "new" facts upon which the plaintiff's conversion and contract claims are based were pleaded by her since the inception of the case, 2) these purported relevant

USIDOCS 5950666v4

facts were not recently uncovered during discovery, and 3) there is no justification for the plaintiff's lack of diligence in asserting the additional claims within the period required by the Scheduling Order. See Berwind, 233 F.R.D. at 67 (denying leave to amend where the plaintiff had knowledge of the underlying basis of the proposed claims when it initially filed the complaint).[3]

Accordingly, the Court should deny the plaintiff's request to file an additional memorandum in support of her Motion to for Leave to Further Amend, and the Motion to Amend should be denied.

---

[3] The Fryer Affidavit also argues that because defendants (1) belatedly produced documents and (2) intentionally delayed the close of fact discovery, additional grounds for good cause exist. The plaintiff fails to provide any support for the contention that the defendants delayed discovery. In fact, the defendants' ability to depose witnesses before September 29 was affected by routine scheduling conflicts. Moreover, plaintiff *consented to the time and place of each deposition*. Further, none of the delayed depositions or the documents produced on October 25, 2006 is relevant to the "new facts" that the plaintiff claims give rise to her proposed conversion and contract claims. For example, the plaintiff argues that Exhibit E to the Fryer Affidavit (a matter opening form) is a recently produced document that supports her claim for good cause. However, the plaintiff fails to address, let alone demonstrate that the information in that document is relevant to either the contract or conversion claim. Further, the information that it contains— a matter was opened called "Alexis Burns /Agency"—is redundant of the often pleaded fact that an account titled Alexis Burns Agency was opened at Haldor.

## CONCLUSION

For all the foregoing reasons, the defendants respectfully request that the Court:

1. Deny the plaintiff's Motion for Leave to File Memorandum in Support of Motion to Further Amend Complaint;

2. Deny the plaintiff's Motion for Leave to Further Amend Complaint;

3. Award defendants such further relief as the Court deems just.

        Respectfully submitted,

        HALE AND DORR LLP, WILMER CUTLER PICKERING HALE AND DORR LLP, HALDOR INVESTMENT ADVISORS LIMITED PARTNERSHIP, and HALE AND DORR CAPITAL MANAGEMENT LLC

        By their attorneys,

        /s/ Mary B. Strother
        Jerome P. Facher (BBO #157240)
        Mary B. Strother (BBO #631682)
        WILMER CUTLER PICKERING HALE AND DORR LLP
        60 State Street
        Boston, MA 02109
        Phone: (617) 526-6000
        Fax: (617) 526-5000

Dated: December 4, 2006

## CERTIFICATE OF SERVICE

I, Mary B. Strother, hereby certify that I served a true and correct copy of the foregoing Opposition to Plaintiff's Motion for Leave to File a Second Amended Complaint upon R. Alan Fryer, Badger, Dolan, Parker & Cohen, One State Street, Suite 600, Boston, Massachusetts on this 4th day of December, 2006 by electronic service through ECF, and by first class mail.

        /s/ Mary B. Strother
        Mary B. Strother

USIDOCS 5950666v4

# EXHIBIT A

Exhibits: 98-104                    Volume 1, Pages 1-87

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MASSACHUSETTS

-------------------------------

ALEXIS J. BURNS by and through her

legal guardian, OFFICE OF PUBLIC

GUARDIAN

        Plaintiff

vs.                    Civil Action No. 05-11113NMG

HALE AND DORR LLP, et al.

        Defendants

-------------------------------

DEPOSITION OF ANDREW C. MEYER, JR.

Tuesday, August 29, 2006, 10:07 a.m.

Badger, Dolan, Parker & Cohen

One State Street

Boston, Massachusetts


------- Reporter: Susan J. Blatt, RPR -------

sblatt@fabreporters.com    www.fabreporters.com

Farmer Arsenault Brock LLC

50 Congress Street, Suite 415, Boston, Mass. 02109

617.728.4404   fax 617.728.4403

Andrew C. Meyer, Jr.
Volume 1 - August 29, 2006

---

**Page 18**

1  payment of the verdict.
2  Q. Are the expenses shown in that document the
3  same expenses that are listed in Exhibit 103?
4  A. They are. This sheet includes legal fees
5  as well.
6  Q. Now, do you recall whether there were any
7  liens placed on the recovery in the Burns case?
8  A. I don't recall.
9  Q. Can you tell from Exhibit 47 or Exhibit 103
10 whether there were any medical expenses paid out of
11 the amounts recovered for Alexis?
12 A. It doesn't appear there were.
13 Q. If you look at Exhibit 47, the bottom of
14 the second page, under the listing of deductions,
15 the third-to-last line has one for "Chaulk
16 Services." Do you see that?
17 A. I do.
18 Q. Do you know what that is?
19 A. I don't.
20 Q. Was that Chaulk Ambulance?
21 A. I really don't know.
22 Q. If there had been any unpaid medical bills
23 for Alexis that you were aware of at the time you
24 recovered funds on her behalf what, if anything,

---

**Page 19**

1  would you have done with respect to those?
2     MR. HEYISON: Object to the form.
3  A. If there was a lien, we would have paid it;
4  if we were aware of any of kind of lien, we would
5  have withheld sums to pay.
6  Q. Now, Exhibit 47, after the itemization of
7  the amounts deducted from the recovery, there's a
8  few paragraphs followed, as you noted earlier, by a
9  signature by David Burns. Do you see that?
10 A. I do.
11 Q. What's the purpose of that part of the
12 document?
13    MR. HEYISON: Object to the form.
14 A. The purpose is to have the client approve
15 and authorize the expenses to make sure the client
16 is satisfied with the delineation of the expenses,
17 agrees to them, and approves them, so we can pay
18 them.
19 Q. Is this what you were referring to earlier
20 when you indicated that David Burns had signed as
21 father and next friend of Alexis?
22 A. I was.
23 Q. Do you have any understanding as to why
24 this was signed by David Burns rather than Bonnie

---

**Page 20**

1  Davis?
2  A. I don't. She may not have been available.
3  I'm really not -- I don't remember.
4  Q. Let me show you Exhibit 5. Can you
5  identify that?
6  A. It is a check from our clients fund account
7  to David Burns.
8  Q. What does that check represent?
9     MR. HEYISON: Object to the form.
10 A. It represents the amount due and owing to
11 -- from the verdict.
12 Q. Does the amount of that check match the net
13 amount shown on that Exhibit 47?
14 A. It does.
15 Q. And who is the check payable to?
16 A. David Burns, trustee.
17 Q. Does it indicate in the bottom left corner
18 of the check anything else?
19 A. It does. It indicates that it's for Alexis
20 Burns.
21 Q. Burns, comma, A. is Alexis Burns?
22 A. Exactly.
23 Q. After your office issued this check, do you
24 recall what happened to the check?

---

**Page 21**

1     MR. HEYISON: Object to the form.
2  A. I don't have a specific recollection of
3  what happened to the check. I know it was going
4  over to Hale and Dorr.
5  Q. If you look at Exhibit 47, the last page of
6  the exhibit there, is the date next to David Burns's
7  signature the same date as the check that's Exhibit
8  5?
9  A. It is.
10 Q. Did David Burns come to your office to sign
11 the statement that's attached to the fax cover sheet
12 in Exhibit 47?
13 A. He did.
14 Q. Does that refresh your memory as to what he
15 did with the check?
16 A. No, it really doesn't. He either carried
17 it over or -- my guess is -- I'd only guessing, but
18 I believe I gave him the check and he took it over
19 to Hale and Dorr.
20 Q. Let me show you Exhibit 4. Can you
21 identify that?
22 A. I can.
23 Q. And what is it?
24 A. This appears to be a letter which -- Jack