United States District Court
District of Massachusetts

```
_____
                                 )
ALEXIS J. BURNS, by and through  )
her legal guardian,              )
OFFICE OF PUBLIC GUARDIAN,       )
        Plaintiff,               )    Civil Action No.
                                 )    05-11113-NMG
        v.                       )
                                 )
HALE AND DORR LLP, WILMER CUTLER )
PICKERING HALE AND DORR LLP,     )
HALDOR INVESTMENT ADVISORS       )
LIMITED PARTNERSHIP, and HALE    )
AND DORR CAPITAL MANAGEMENT LLC, )
        Defendants.              )
                                 )
_____)
```

**MEMORANDUM & ORDER**

GORTON, J.

A motion to compel and several related discovery motions are pending in this action. The lawsuit was commenced by the Office of Public Guardian ("the OPG") on behalf of the plaintiff, Alexis J. Burns, against the law firm Hale and Dorr LLP ("H&D"), its successor Wilmer Cutler Pickering Hale and Dorr LLP ("Wilmer"), Haldor Investment Advisors LP ("Haldor") and its successor Hale and Dorr Capital Management LLC ("H&D Capital"). The pending motions are resolved as follows.



I.  **Background**

Burns, a young woman who suffers from cerebral palsy which resulted from difficulties at birth, was awarded a judgment in May, 1999, of approximately $2.5 million in a lawsuit against physicians for medical malpractice. Acting on her behalf, Burns's attorney at the time entered into an agreement with H&D whereby that firm was to create a trust for her benefit ("the Trust"). According to the agreement, the judgment proceeds were to constitute the res of the Trust ("the Trust Funds").

H&D promptly drafted a declaration of trust ("the Declaration") which provided that H&D's investment affiliate, Haldor, would manage the Trust Funds and that two trustees would be appointed to make distributions for the benefit of Burns during her lifetime. Burns's father, David Burns ("Mr. Burns"), was to be one trustee while the other was to be an independent party. The Trust Funds were delivered to H&D and deposited into a trust account. Although the Declaration was supposed to be signed by Mr. Burns as the declarant, and by both trustees in their fiduciary capacities, Mr. Burns never signed the Declaration and a second trustee was never appointed.

Despite their failure to have the Declaration executed, Haldor and/or H&D distributed approximately $1.6 million of the Trust Funds to Mr. Burns, at his request, between May, 1999 and April, 2003. In April, 2003, defendants learned that Mr. Burns

was incarcerated in New Hampshire. Plaintiff alleges that defendants disbursed the subject Trust Funds to Mr. Burns without requiring him to demonstrate that the money would be used for his daughter's benefit and that, in fact, the funds were not properly expended. As of July 31, 2003, the balance of the Trust was approximately $640,000 and shortly thereafter the Trust Funds were transferred to an account under the control of the OPG.

Burns filed an initial complaint against defendants in May, 2005, asserting counts for negligence, breach of fiduciary duty, unjust enrichment, money had and received and violations of the Massachusetts Consumer Protection Act, Mass. Gen. Laws ch. 93A (hereinafter, "Chapter 93A"). The purported liability of Wilmer and H&D Capital is premised, at least in part, on their status as successors-in-interest to H&D and Haldor, respectively. Plaintiff filed an amended complaint in October, 2005 and, on July 21, 2006, this Court denied the defendants' joint motion for partial judgment on the pleadings.

In October, 2006, the plaintiff filed motions to compel certain discovery, to amend the complaint for the second time and to amend the scheduling order, all of which motions are opposed. Several other procedural motions are also pending.

II. **Analysis**

   A.   **Motion to Compel**

The plaintiff seeks an order compelling the defendants to produce documents and to provide deposition testimony relating to an internal investigation conducted by H&D while it continued to manage the Trust Funds on behalf of Alexis Burns. H&D contends that the documents in question are subject to the attorney-client privilege.

The plaintiff advances three arguments as to why the attorney-client privilege does not apply to this situation: 1) the privilege does not apply when a law firm conducts an investigation of its own client while continuing to represent that client, 2) the plaintiff, Alexis Burns, was H&D's "true client" and 3) the defendants have waived the privilege.

       1.   **Application of the Privilege**

In April, 2003, upon learning that Mr. Burns was incarcerated, in-house counsel at H&D, Michael Heyison, advised H&D partners on the firm's potential liability. The defendants take the position that, from the moment they first learned in April, 2003 that Mr. Burns was incarcerated through August, 2003, all communications between Mr. Heyison and his partners and/or other employees of the defendants are protected from discovery by the attorney-client privilege.

The plaintiff cites two cases in which courts have held that the attorney-client privilege does not apply when a law firm continues to represent its client while conducting an internal investigation that relates to the firm's representation of that client. See Bank Brussels Lambert v. Credit Lyonnais (Suisse), S.A., 220 F.Supp.2d 283 (S.D.N.Y. 2002); Koen Book Distributors v. Powell, Trachtman, Logan, Carrle, Bowman & Lombardo, P.C., 212 F.R.D. 283 (E.D.Pa. 2002).

In Bank Brussels, a law firm represented the defendant in an action brought by a third party. During the course of its representation, the law firm conducted an internal investigation to determine if it might be liable to its client for malpractice if the client were found liable to the third party. The client subsequently brought a malpractice claim against the firm and requested documents relating to that investigation. The firm asserted the attorney-client privilege but the Court rejected the assertion, concluding that the firm could not claim a privilege against its own client. See 220 F.Supp.2d at 287.

Similarly, in Koen, a client informed the law firm representing him that he was considering a malpractice suit against the firm. Several lawyers within the firm consulted regarding the firm's potential liability to the client while the firm continued to represent him. When the client brought suit against the firm, he sought discovery of the firm's own

investigation of its potential liability and the Court found that the attorney-client privilege did not apply because the firm owed a fiduciary duty to its client while representation of that client was ongoing. The Court also concluded that the firm could have avoided the dilemma by withdrawing from its representation or obtaining its client's consent to continue the representation. See 212 F.R.D. at 285-86.

The plaintiff here contends that the instant case is similar to those cases because H&D and/or Haldor owed a fiduciary duty to Alexis Burns as beneficiary of the Trust. While this case does not involve alleged malpractice, the plaintiff argues that Haldor had a fiduciary obligation to Alexis and that H&D ought not be able to assert a privilege against one to whom it owed a fiduciary duty. That argument merges into the plaintiff's second contention, discussed more fully below, that Alexis was the "true client" of H&D.

Although the facts of this case do not square exactly with the cases cited, which, in turn, are not binding on this Court, the principle is, in essence, the same and the reasoning is compelling. Haldor held, managed and invested the Trust Funds for the benefit of Alexis Burns. It now seeks to shield from discovery documents prepared in anticipation of a possible lawsuit by Alexis Burns. H&D contends that it owes no duty to Ms. Burns because it merely served as an agent for her father,

its actual client. As investment manager of the Trust Funds, however, Haldor also owed a fiduciary duty to Alexis Burns. See Restatement (Second) of Agency § 425, cmt. a ("[t]he duties of an agent who has authority to make and to manage investments are similar to those of the trustee of a formal trust, except in so far as they are affected by the fact that the principal has control and may modify or determine the investments at any time").

The purposes of the attorney-client privilege are threefold: 1) to encourage clients who might otherwise be deterred from seeking legal advice altogether, 2) to promote full disclosure by clients to their attorneys and 3) to enable attorneys to act more effectively, justly, and expeditiously. See Upjohn Co. v. United States, 449 U.S. 383, 389 (1981); Weinstein's Federal Evidence, 2d. ed. § 503.03.

None of those interests is served in this case. The "client" invoking the privilege is H&D itself, which is being represented by another lawyer of the firm. Because the firm owed a fiduciary duty to Alexis Burns as the trust beneficiary, there is no policy reason why H&D should be allowed to withhold disclosure of information relevant to her claim. Because the privilege is inapplicable to this circumstance, the plaintiff's motion to compel will be allowed.

The Court does not, however, by virtue of its ruling, opine on the merits of the case. While the Court is persuaded that, for purposes of the pending discovery motion, the defendants owe a fiduciary duty to the plaintiff and may not invoke the attorney-client privilege against her, it is conceivable that subsequent evidence may emerge that would alter the Court's analysis of the scope of the duties owed by the defendants.

### 2. Alexis Burns is the "True Client"

The plaintiff contends that she, as beneficiary of the Trust, was the "true client" of H&D and that the firm may not invoke the attorney-client privilege against her. H&D responds that its client was Mr. Burns and, therefore, it owes no duty to Ms. Burns as a client.

H&D's view of this dispute is too restrictive. First, Haldor acted not as legal counsel to either Alexis or David Burns, but rather as manager and investment advisor of the Trust Funds. Second, even though David Burns was, technically, the "owner" of the Haldor agency account, H&D drafted a trust for the benefit of Alexis Burns and Haldor managed the Trust Funds on her behalf. H&D and Haldor, therefore, owed a duty to Alexis, the beneficiary of the Trust, notwithstanding the fact that David Burns, as trustee, had authority to withdraw funds from the account.

While the Court declines to confer the designation of "true client" upon Alexis Burns, the principle at issue is the same: H&D/Haldor cannot assert the attorney/client privilege against the plaintiff with respect to any evidence relevant to their management or investment of the Trust Funds on her behalf. The motion to compel will, therefore, be allowed.

### 3. Waiver of Privilege

Finally, the plaintiff argues that even if the attorney-client privilege applies, it has been waived by H&D. According to the plaintiff, a lawyer at H&D, John Fabiano, testified during his deposition about conversations he had with Mr. Heyison that took place during the firm's in-house evaluation of liability. The plaintiff contends that such testimony constitutes a subject matter waiver of the attorney-client privilege. The defendants respond that such testimony did not amount to a waiver of privilege because it did not relate to confidential legal advice but only to underlying facts about the case. In any event, the Court need not decide whether the privilege was waived because the privilege does not apply to the documents in question.

### B. Second Motion to Amend Complaint

On October 26, 2006, The plaintiff filed a motion for leave to amend the complaint, for the second time, to add two counts of conversion and three counts of breach of contract. The defendants oppose the motion because the plaintiff has already

amended the complaint once and the deadline for amendments to the pleadings, pursuant to the scheduling order, expired on January 31, 2006.

A party who seeks to modify the deadlines imposed by a scheduling order must show "good cause" in accordance with Local Rule 16.1(g). That rule also requires that any such motion be "supported by affidavits, other evidentiary materials, or references to pertinent portions of the record". H&D argues that the plaintiff has not shown good cause and, moreover, has failed to meet the requirements of Rule 16.1(g) because she did not file an affidavit or other supporting material with her motion to amend.

In response, the plaintiff sought leave to file a memorandum and the requisite affidavits and exhibits in support of her motion to amend. She also filed a motion to amend the scheduling order so that she might be allowed to amend the complaint. The Court will allow those motions and move on to evaluate whether "good cause" has been shown.

In the supporting affidavit, counsel for the plaintiff contends that the claims which the plaintiff seeks to add, for conversion and breach of contract, are based on facts which were only discovered during the course of discovery. While the claims arise from the same basic set of facts, plaintiff argues that they could not have formulated causes of action sounding in

contract or conversion until certain evidence came to light during depositions taken in August, 2006.

The Court concludes that amending the complaint will not result in any prejudice to the defendants because the claims which the plaintiff seeks to add, while technically separate causes of action, are related to the core allegations in the case. Nor, as plaintiff points out, will such an amendment result in any other change to the scheduling order or further delay the proceedings. The motion for leave to amend the complaint will, therefore, be allowed.

### C.   Joint Motion to Amend Scheduling Order

The parties have filed a joint motion to further amend the scheduling order in light of the fact that discovery took longer than expected to complete. Because the motion is filed jointly and is reasonable, it will be allowed.

## ORDER

In accordance with the foregoing:

1) Plaintiff's motion to compel discovery (Docket No. 17) is **ALLOWED**;

2) Plaintiff's motion for leave to amend the complaint (Docket No. 22) is **ALLOWED**;

3) Plaintiff's motion for leave to file reply brief in support of motion to amend (docket No. 23) is **DENIED** as moot;

4) Plaintiff's motion for leave to file memorandum in support of motion to amend the complaint (Docket No. 26) is **ALLOWED**;

5) Plaintiff's motion to amend the scheduling order (Docket No. 28) is **ALLOWED**;

6) Plaintiff's motion to correct affidavit (Docket No. 31) is **ALLOWED**; and

7) Joint motion to further amend scheduling order (Docket No. 34) is **ALLOWED**.

**So ordered.**

/s/ Nathaniel M. Gorton
Nathaniel M. Gorton
United States District Judge

Dated May 14, 2007